IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| TAMARA ROBINSON,<br><br>              Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>              Defendant. | CV-05-89-GF-CSO<br><br>**ORDER GRANTING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND AFFIRMING COMMISSIONER'S DECISION DENYING SSI** |

Plaintiff Tamara Robinson ("Robinson") initiated this action to obtain judicial review of the decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383(c).

On January 9, 2006, upon the parties' written consent, this case was assigned to the undersigned for all purposes. Court's Doc. No. 7. Now pending before the Court are the parties' cross motions for summary judgment. Court's Doc. No. 10 (Robinson's motion) and Court's Doc. No. 12 (Commissioner's motion). Having considered the issues presented by the parties, together with

the administrative record, the Court hereby affirms the
Commissioner's decision denying SSI, grants the Commissioner's
motion for summary judgment, and denies Robinson's motion for
summary judgment.

I.   *PROCEDURAL BACKGROUND*

Robinson has filed for SSI benefits three times.  The Court
addresses *infra* each filing in turn.

A.   *1993 Application*

Robinson first filed an application for SSI on February 26,
1993.  *Tr. at 94-95*.  The Social Security Administration ("SSA")
determined that she was disabled and awarded her benefits.  *Id*.
She later became ineligible for SSI benefits in September 1993
because of excess income after her husband inherited property
from his mother's estate.  *Tr. at 128-29, 486*.

B.   *1998 Application*

Robinson next applied for SSI in July of 1998.  *Tr. at 106-
07*.  The SSA denied the application initially and on
reconsideration.  *Tr. at 51-55, 96-98*.  After a hearing held on
August 25, 1999 (*Tr. at 26-50*), an Administrative Law Judge
("ALJ") found that Robinson was not disabled because, despite
various severe impairments, she retained the residual functional
capacity ("RFC") to perform the full range of sedentary work.
*Tr. at 13-17*.  The Appeals Council declined to review the ALJ's
determination.  *Tr. at 4-6*.  Robinson appealed to this Court.

Robinson v. Barnhart, CV-00-138-GF-SEH.

On January 28, 2002, Magistrate Judge Robert M. Holter issued a Report and Recommendation recommending that the Commissioner's decision be affirmed. *Tr. at 250-56*. On March 8, 2002, District Judge Sam E. Haddon adopted Judge Holter's determination that substantial evidence supported the ALJ's finding that Robinson retained the RFC to perform the full range of sedentary work. *Tr. at 247-49*. However, Judge Haddon rejected Judge Holter's conclusion that the ALJ did not err in considering whether Robinson's impairments met the Listing of Impairments. Judge Haddon remanded the case to the Commissioner for further administrative proceedings on that issue. *Id*.

On July 31, 2003, Robinson requested that the ALJ, without a hearing, issue a decision on the record with respect to the remanded issue. *Tr. at 270*. On August 11, 2003, the ALJ rendered a decision pursuant to Judge Haddon's remand order. The ALJ, *inter alia*, determined that Robinson's impairments, either alone or in combination, neither met nor equaled the criteria for any impairment in the Listing of Impairments. *Tr. at 228-31*. Robinson did not request administrative or judicial review of the decision. *Pltf's Combined Mtn. for Summary Judgment and Brief in Support of Mtn.* [hereafter "*Robinson's Opening Br.*"] *at 4*.

-3-

C.   *2001 Application*

On November 7, 2001, Robinson filed an application for SSI with a protective filing date of September 24, 2001.  *Tr. at 283-84, 306-10*.  She alleged an inability to work since September 24, 2001.  *Tr. at 306*.  The SSA denied her application initially and upon reconsideration.  *Tr. at 283-88, 291-93*. After an administrative hearing held on March 13, 2003, (*Tr. at 456-502*), at which Robinson appeared with counsel, an ALJ, in a written decision dated June 2, 2003,[1] found that Robinson was not disabled within the meaning of the Act.  The ALJ found that Robinson could perform the full range of sedentary work.  *Tr. at 242 (Finding No. 8)*.  The Appeals Council declined to review the ALJ's determination *(Tr. at 217-21)*, making the determination the Commissioner's final decision for purposes of judicial review.  20 C.F.R. § 416.1481 (2005).  Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

II.  *STANDARD OF REVIEW*

This Court's review is limited.  The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is "such relevant

---

[1]This decision, which is the subject of the instant case, predates by more than two months the ALJ's decision rendered pursuant to Judge Haddon's remand order on Robinson's 1998 SSI application.

-4-

evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995). Substantial evidence also has been described as "more than a mere scintilla" but "less than a preponderance." <u>Sandegathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997). The District Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. <u>Green v. Heckler</u>, 803 F.2d 528, 530 (9th Cir. 1986) (<u>citing</u> <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985)). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).

## III. *<u>BURDEN OF PROOF</u>*

A claimant is disabled for purposes of the Social Security Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is

not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." <u>Schneider v. Commr. of Soc. Sec. Admin.</u>, 223 F.3d 968, 974 (9th Cir. 2000) (<u>citing</u> 42 U.S.C. § 1382(c)(a)(3) (A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. <u>Corrao v. Shalala</u>, 20 F.3d 943, 946 (9th Cir. 1994) (<u>citing</u> 42 U.S.C. § 1382C(a)(3)).  The process is as follows:

1.  The claimant must first show that he or she is not currently engaged in substantial gainful activity. <u>Id</u>.

2.  If not so engaged, the claimant must next show that he or she has a severe impairment.  <u>Id</u>.

3.  The claimant is conclusively presumed disabled if his or her impairments are equivalent to one on the list of impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.

4.  If the claimant does not have a listed impairment, then the claimant must establish a prima facie case of disability by showing an inability to engage in past work because of the medical impairments. <u>Corrao</u>, 20 F.3d at 946.

5.  Upon such a showing, the burden then shifts to the Commissioner to prove that plaintiff can engage in other types of substantial gainful work existing in the national economy given the claimant's age, education, work experience and residual functional capacity ("RFC"). <u>Jones</u>, 760 F.2d at 995.

If the Commissioner finds that a claimant is disabled or not disabled at any point in this process, the review process is

terminated.  <u>Corrao</u>, 20 F.3d at 946.

**IV.  _DISCUSSION_**

In his written decision, the ALJ followed the five-step sequential evaluation process in considering Robinson's claim. From a review of the evidence of record, and the testimony presented at the hearing, the ALJ first found that Robinson had not engaged in substantial gainful activity since her alleged onset date of September 24, 2001.  _Tr. at 237, 242_.

Second, the ALJ found that Robinson has: (1) morbid obesity; (2) Grade 1 spondylolisthesis with left sciatica; (3) history of plantar fasciitis; (4) bronchitis; (5) hypertension; (6) probable COPD; (7) lumbar, thoracic, and cervical degenerative disc disease; (8) situational depression; and (9) left ulnar neuropathy.  _Tr. at 237, 242._  The ALJ found that all of these conditions, except the situational depression and hypertension, are "severe" by Social Security definition.  _Id_.[2]

Third, the ALJ found that Robinson's impairments do not meet or medically equal, either alone or in combination, any impairment in the Listing of Impairments.  _Tr. at 238, 242_.

Fourth, the ALJ found that Robinson has no past relevant work experience and no transferable skills.  _Tr. at 241, 242_.

Fifth, the ALJ found that Robinson has the RFC to perform

---

[2]The ALJ also noted that, contrary to Robinson's allegations, "no physician has offered a fibromyalgia diagnosis nor identified any actual trigger points."  _Tr. at 237_.

the full range of sedentary work.  *Tr. at 242*.  The ALJ also found that, in light of Robinson's RFC, age, education, and work experience, Rule 201.18 of the Medical-Vocational Guidelines provides that she is not disabled under the Act.  *Id*.

In seeking reversal of the Commissioner's decision, Robinson first argues that the ALJ erred in failing to conclude that her conditions are equal to the severity of conditions listed in the Listing of Impairments.  *Robinson's Opening Br. at 7-10*.  She argues that her conditions medically equal Listings 1.02A, 1.04A, and 3.02.  *Id. at 9-10*.

Second, Robinson argues that the ALJ erred in finding that she retains the RFC to perform the full range of sedentary work.  *Id. at 10-15*.  She argues that the ALJ's conclusion with respect to her RFC for sedentary work is "wanting" because it relies on the ALJ's improper evaluation of her credibility, and on his improper evaluation of the opinions of Drs. Ronald Peterson and Laura Shelton.  *Id*.

In response, the Commissioner first argues that the ALJ did not err with respect to his assessment of Robinson's RFC for the full range of sedentary work.  The Commissioner maintains that the evidence of record did not indicate a "change in circumstances" since the November 22, 1999, denial of Robinson's 1998 SSI application.  *Deft's Brief in Support of Her Mtn. for Summary Judgment* [hereafter "*Commissioner's Br.*"] *at 4-9*.  Thus,

the Commissioner argues, under <u>Chavez v. Bowen</u>, 844 F.2d 691, 693 (9th Cir. 1988), the 1999 finding that Robinson was not disabled created a presumption of continuing non-disability that Robinson has failed to overcome.  *Id.*

Second, the Commissioner argues that the ALJ did not err with respect to his determination that Robinson was not fully credible.  *Id. at 9-11.*  Third, the Commissioner argues that the ALJ properly considered the opinions of Drs. Peterson and Shelton.  *Id. at 11-13.*  Finally, the Commissioner argues that the ALJ did not err in concluding that Robinson's conditions did not meet or equal an impairment in the Listing of Impairments. *Id. at 13-14.*

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the decision is based on legal error.  For the reasons set forth below, the Court finds that the Commissioner's decision is based on substantial evidence in the record, and is free of legal error.

## A.   ***Presumption of Continuing Nondisability***

As an initial matter, the Court addresses the issue of whether there was a presumption of continuing nondisability in light of Robinson's failed 1998 application for SSI benefits. In the Ninth Circuit, res judicata applies to the Commissioner's final decisions regarding disability.  <u>Taylor v. Heckler</u>, 765 F.2d 872, 876 (9th Cir. 1985).  When the SSA denies a claim for

disability benefits and the claimant does not appeal, the decision denying benefits becomes binding on all parties and creates "a presumption of continuing non-disability." Id. at 875. However, res judicata applies "less rigidly" in administrative proceedings than in judicial proceedings. Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988). Thus, to overcome the presumption, the claimant must prove only "changed circumstances" that show a greater disability. Taylor, 765 F.2d at 875 (quoting Booz v. Secretary, 734 F.2d 1278, 1379-80 (9th Cir. 1984)); Chavez, 844 F.2d at 693.

To demonstrate "changed circumstances," a claimant could show that the severity of his or her impairment has increased since the unfavorable decision. Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1996). However, as the Ninth Circuit noted in Lester, demonstrating an increase in the severity of his or her impairment is not the only way by which a claimant can show "changed circumstances" sufficient to preclude application of res judicata. Rather, the court noted:

> Other changes suffice. For example, a change in the claimant's age category, as defined in the Medical-Vocational Guidelines, constitutes a changed circumstance that precludes the application of res judicata. Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988). In addition, the Commissioner may not apply res judicata where the claimant raises a new issue, such as the existence of an impairment not considered in the previous application. Gregory v. Bowen, 844 F.2d [664,] 666 [(9th Cir. 1988)]. Nor is res judicata to be applied where the claimant was unrepresented by counsel at the time of the prior

claim.  Id.

Lester, 81 F.3d at 827-28.

In the case at hand, as set forth in the "Procedural Background" section *supra*, the ALJ issued his final decision on Robinson's 1998 application on August 11, 2003.  This was more than two months after the ALJ's decision addressing Robinson's claim for SSI benefits at issue here.  Thus, there was no final decision on Robinson's 1998 application before the ALJ's decision on Robinson's 2001 application.  No presumption of continuing nondisability could have been applied by the ALJ in reaching his decision on the 2001 application.  Whether the Court should apply the presumption of continuing nondisability in this factual context is an issue not specifically briefed by the parties.  The Court, therefore, will address the issues raised with respect to the ALJ's decision on Robinson's 2001 application without presuming continuing nondisability.

B.  ***Consideration of Robinson's Credibility***

Robinson argues that the ALJ erred in finding her not credible.  In light of the evidence of record, Robinson's argument is unpersuasive.

When considering a claimant's subjective symptom testimony, an ALJ must perform a two-stage analysis: (1) the Cotton test; and (2) an analysis of the claimant's credibility as to the severity of the symptoms.  Smolen v. Chater, 80 F.3d 1273, 1281

-11-

(9th Cir. 1996) (referring to <u>Cotton v. Bowen,</u> 799 F.2d 1403 (9th Cir. 1986)).  The <u>Cotton</u> test requires only that the claimant (1) produce objective medical evidence of an impairment; and (2) show that the impairment(s) could reasonably be expected to produce some degree of symptom.  <u>Smolen</u>, 80 F.3d at 1281-82 (citing <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) and <u>Cotton</u>, 799 F.2d at 1407-08); 20 C.F.R. § 404.1529(a) and (b).

If the <u>Cotton</u> test is satisfied, and there is no evidence of malingering, then the ALJ can reject subjective testimony of the severity of the symptoms only by citing specific, clear and convincing reasons for doing so.  <u>Smolen,</u> 80 F.3d at 1283-84 (citing <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993)). To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities.  <u>Id</u>., at 1284; <u>Fair v. Bowen</u>, 885 F.2d 597, 603-604 (9th Cir. 1989).  However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint."  <u>Reddick v. Chater</u>. 157 F.3d 715, 722 (9th Cir. 1998) (quoting <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995)).  The ALJ must also consider the factors set forth in SSR 88-13 including:

(1)  The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2)  Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3)  Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4)  Treatment, other than medication, for relief of pain;

(5)  Functional restrictions; and

(6)  The Claimant's daily activities.

Id. at 727; 20 C.F.R. § 416.929(c) (2005).

Here, the ALJ found objective medical evidence in the record to support some of Robinson's limitations. *Tr. at 237, 242.* He also found that Robinson's impairments could reasonably be expected to produce some degree of symptom. *Id.* Moreover, the ALJ did not expressly find that Robinson was malingering. *Id.* Thus, to reject Robinson's subjective testimony about the severity of her symptoms, the ALJ had to cite specific, clear and convincing reasons. Smolen, 80 F.3d at 1283-84. The Court finds that he did.

First, the ALJ noted that the medical evidence of record does not support Robinson's subjective allegations with respect to the degree of her functional limitations. *Tr. at 239.* He further noted that objective medical findings of record did not support Robinson's allegation that her conditions have worsened. *Tr. at 240.* For example, the ALJ noted:

A MRI scan of November 19, 2001 was obtained but it

-13-

showed unchanged Grade 1 spondylolisthesis, minimal
posterior spondylosis at T10-11, and less than 1 cm.
sclerotic lesion in L1 only slightly more conspicuous
compared to 1993 radiographs.  Earlier x-rays showed
only mild C1-C2 degenerative change and previous nerve
conduction study showed only mild to moderate
abnormalities.

*Id*.

Second, while acknowledging Robinson's medical conditions,
the ALJ observed that several of her conditions did not require
treatment or that they have responded favorably to treatment.
*Tr. at 239*.  For example, the ALJ noted that: (1) Robinson has
received mostly outpatient care for her chronic back pain; (2)
her hypertension was controlled by medication; (3) she was
hospitalized once in December of 2001 for hypoxemia, which
improved to normal when she used oxygen; and (4) her bilateral
heel pain improved with padding and taping.  *Id*.

Third, the ALJ noted inconsistencies between Robinson's
allegations of functional limitations and the evidence of
record.  For example, the ALJ observed that if Robinson really
had been bedridden for 3 days each week as she alleged, one
might reasonably expect that she would have had more significant
forms of treatment than she has received.  *Id*.  Additionally, he
noted that Robinson had no significant motor changes and no
muscle atrophy, and her physicians have recommended exercise,
not inactivity or excessive rest.  *Tr. at 240.*

Similarly, the ALJ noted that: (1) although Robinson

-14-

complained that she frequently dislocates her shoulder, no physician has ever observed this; (2) although Robinson has alleged that she has numb hands, she has no difficulty with grasping and fine manipulation; (3) although her podiatrist, Dr. Clough, noted that Robinson walked very tentatively, he also observed that there was minimal mechanical dysfunction of her feet; (4) although Robinson reported that she uses a wheelchair, no physician has observed functional limitations that would call for use of a wheelchair, and none has prescribed a wheelchair or other assistive device for medical reasons; and (5) although Robinson claimed to suffer from fibromyalgia, no physician has diagnosed that condition. *Tr. at 240-41.*

Fourth, the ALJ noted that he also considered Robinson's work history in assessing her credibility. He noted that she has not worked since 1978, "which does not suggest a significant effort to work." *Tr. at 241.*

All of the foregoing observations indicate that the ALJ applied ordinary credibility evaluation techniques, which he was permitted to do, in finding Robinson not fully credible. Smolen, 80 F.3d at 1283-84 (citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)). From all of the ALJ's findings, which the Court believes are consistent with the evidence of record, the ALJ was permitted to draw the inference that Robinson's testimony with respect to the level of severity of

her symptoms was not credible.

With respect to Robinson's argument that the ALJ misconstrued the evidence, the Court notes that it is not permitted to substitute its own interpretation of the evidence for the ALJ's interpretation.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  <u>Thomas</u>, 278 F.3d at 954 (citation omitted).

Based upon careful review of the record, the Court concludes that the ALJ provided specific, clear and convincing reasons for his conclusion with respect to Robinson's credibility.  Thus, he did not err.

C.   ***ALJ's Consideration of Medical Source Opinions***

Robinson argues that the ALJ erred in failing to properly reject the opinions of Drs. Shelton and Peterson.  She argues that the ALJ erred in rejecting Dr. Shelton's opinions with respect to Robinson's functional capabilities.  With respect to Dr. Peterson, she argues that the ALJ erred in not even discussing Dr. Peterson's report in which he opined that Robinson was not capable of handling competitive employment. *Robinson's Opening Br. at 11-12*.

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  At least where the treating doctor's

-16-

opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons. [The Ninth Circuit Court of Appeals has] also held that 'clear and convincing' reasons are required to reject the treating doctor's ultimate conclusions.  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (citations omitted).

Having reviewed the record and the parties' arguments, the Court concludes that the ALJ did not err.  With respect to his consideration of the opinion of Dr. Shelton, the ALJ noted that she is Robinson's treating physician and he, therefore, "carefully considered" her opinion.  *Tr. at 241*.

The ALJ acknowledged that he did not reject Dr. Shelton's objective findings with respect to Robinson's impairments.  He did reject, however, Dr. Shelton's conclusions on a medical assessment form that dealt with Robinson's functional capacities related to her ability to do work-related activities.  This assessment form included Dr. Shelton's findings that Robinson was capable of lifting/carrying only 5 pounds occasionally, standing or walking for only 2 to 5 minutes at a time, and sitting for only 15 minutes at a time.  As noted on the form,

-17-

Dr. Shelton also found that Robinson could never climb, kneel, balance, crouch, or crawl, and could stoop only once or twice. Also, Dr. Shelton found that Robinson could not reach with her left shoulder and could not handle day-to-day tasks, nor could she concentrate due to pain.  *Id*.; see also *Tr. at 446-48*.

The ALJ stated that he rejected these conclusions because they are

> overrated by virtue of repeating the claimant's own subjective description of her pain and limitations, [are] inconsistent with the objective medical findings, and [are] unsupported by any testing.

*Tr. at 241*.

The ALJ expounded upon this conclusion noting that, although Robinson exhibited some tenderness on examination, there exists no evidence of significant motor changes and Robinson has full use of her extremities.  *Id*.  Also, the ALJ noted that in October of 2001, a physician's assistant observed the Robinson had good strength, could do a deep knee bend, walk on her heels and toes, and bend over and touch her toes.  She also had full extension, lateral bending and rotational movements on examination.  *Id*.  Finally, the ALJ noted that even when Robinson was hospitalized in December of 2001, she had no significant motor abnormalities.  *Id*.

Viewing the record as a whole, the Court cannot say that the ALJ erred with respect to his rejection of Dr. Shelton's opinions rendered on the medical assessment form.  As discussed,

the ALJ provided clear, specific and legitimate reasons for his rejection of Dr. Shelton's opinions.  Further, the ALJ's reasons are supported by substantial evidence in the record.  He did not err.

Second, with respect to the opinion of Dr. Peterson, it is true that the ALJ did not mention Dr. Peterson by name in his decision.  However, Dr. Peterson's evaluation of Robinson, dated October 2, 2000 (*Tr. at 366-69*), predates Robinson's alleged onset date of September 24, 2001 (*Tr. at 306*).  Thus, his evaluation is of limited relevance to the pertinent time period.  Additionally, since Dr. Peterson only saw Robinson on one occasion to evaluate her functional ability, the Commissioner is correct that he does not qualify as a "treating source" under the regulations.  See 20 C.F.R. § 416.902.

Also, a review of Dr. Peterson's evaluation indicates his objective findings are not inconsistent with the medical evidence of record, which the ALJ thoroughly discussed in his written opinion.  Compare *Tr. at 366-69* (Dr. Peterson noting, for example, that Robinson suffers from chronic lower back pain with spondylolisthesis, bilateral foot pain from recurrent plantar fasciitis, and morbid obesity) with *Tr. at 237-40* (the ALJ noting, for example, that Robinson has severe impairments of Grade 1 spondylolisthesis, history of plantar fasciiis, lumbar, thoracic, and cervical degenerative disc disease, and obesity).

-19-

From the foregoing comparison, it cannot reasonably be concluded that, had the ALJ specifically addressed Dr. Peterson's evaluation, he would have concluded that Robinson is disabled under the Act.

Also, with respect to Dr. Peterson's statement that Robinson is not "capable of working within the competitive job market[,]" such opinions relate to issues reserved solely to the Commissioner, and are never entitled to controlling weight.  20 C.F.R. § 416.927(e)(1)-(3) (2005) (a statement by a medical source that a claimant is "unable to work" is not a medical opinion, but rather an opinion on an issue reserved to the Commissioner because it is an administrative finding dispositive of a case).  Because the ALJ was not required to accept Dr. Peterson's opinion as determinative on the issue of disability, it cannot be said that he erred in not mentioning Dr. Peterson's opinion.  Even if one could reasonably argue that the ALJ erred in failing to mention Dr. Peterson's opinion, for the reasons discussed above, the Court concludes that any error was harmless for the reasons already stated.  Thus, the Court need not reverse the Commissioner's decision.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless").

In summary, for the reasons stated, the Court concludes that the ALJ did not err in his consideration of the opinions of

-20-

Robinson's medical sources.  If he did, any error was harmless.

D.  ***Listing of Impairments***

Although Robinson acknowledges that "none of her conditions might actually *meet* a Listing," she argues that the "totality of the circumstances" indicate that her impairments are equivalent to a listed impairment.  *Robinson's Opening Br. at* 7 (emphasis in original).  Again, she argues that her conditions medically equal Listings 1.02A, 1.04A, and 3.02, and that the ALJ erred in failing to find her disabled under the Listings.  *Id. at 9-10*.

Medical equivalence in SSI cases is determined in accordance with 20 C.F.R. § 416.926(a), which provides:

> *How medical equivalence is determined*.  We will decide
> that your impairment(s) is medically equivalent to a
> listed impairment in appendix 1 of subpart P of part
> 404 of this chapter if the medical findings are at
> least equal in severity and duration to the listed
> findings.  We will compare the symptoms, signs, and
> laboratory findings about your impairment(s), as shown
> in the medical evidence we have about your claim, with
> the corresponding medical criteria shown for any
> listed impairment.  When we make a finding regarding
> medical equivalence, we will consider all relevant
> evidence in your case record.  Medical equivalence can
> be found in two ways:
>
>> (1)(i) If you have an impairment that is
>> described in the Listing of Impairments in
>> appendix 1 of subpart P of part 404 of this
>> chapter, but--
>>
>>> (A) You do not exhibit one or more
>>> of the medical findings specified
>>> in the particular listing, or
>>>
>>> (B) You exhibit all of the medical
>>> findings, but one or more of the
>>> findings is not as severe as

specified in the particular listing;

(ii) We will nevertheless find that your
impairment is medically equivalent to that
listing if you have other medical findings
related to your impairment that are at least
of equal medical significance.

(2) If you have an impairment that is not
described in the Listing of Impairments in
appendix 1, or you have a combination of
impairments, no one of which meets or is
medically equivalent to a listing, we will
compare your medical findings with those for
closely analogous listed impairments. If the
medical findings related to your
impairment(s) are at least of equal medical
significance to those of a listed impairment, we will find that
your impairment(s) is medically equivalent to the analogous
listing.

In the case at hand, the ALJ expressly found that

Robinson's impairments, either alone or in combination, do not

meet or medically equal any impairment in the Listing of

Impairments. *Tr. at 238, 242*. In his written decision, the ALJ

did not refer to any specific listing. A reference to the

specific listings considered would be helpful to the parties and

to the Court. Nonetheless, here the ALJ did include in his

analysis a discussion of Robinson's specific medical conditions

and their severity and duration. As discussed *infra*, the

analysis he employed and discussion he presented seamlessly

transfer to the listings that Robinson now argues she meets.

With respect to Listing 1.02, which addresses major

dysfunction of a joint, and Listing 1.04, which addresses

disorders of the spine, the ALJ discussed Robinson's

degenerative disc disease and Grade 1 spondyloisthesis.  He noted that various tests and x-rays revealed only mild to moderate abnormalities, with no evidence of actual disc herniation or nerve root impingement.  He also mentioned that examination findings showed no significant loss of motor function and no atrophy, and that Robinson is able to ambulate effectively.  *Tr. at 238*.  The ALJ's findings are based on substantial evidence in the record.  He did not err in considering whether Robinson's impairments are equivalent to those in Listings 1.02 and 1.04.

With respect to Listing 3.02, which addresses chronic pulmonary deficiency, the ALJ noted that Robinson has bronchitis from a smoking habit and likely has COPD.  However, the ALJ noted, spirometry testing revealed only some minor obstruction.  *Id*.  The ALJ's findings are based on substantial evidence in the record.  Thus, he did not err in considering whether Robinson's impairments are equivalent to those in Listing 3.02.  *See generally* <u>Burch v. Barnhart</u>, 400 F.3d 676 (9th Cir. 2005).

**V.    *CONCLUSION***

Based on the foregoing, the Court finds that substantial evidence exists in the record to support the ALJ's decision.  The Court further finds that the ALJ's decision is not based on legal error.  Therefore,

**IT IS ORDERED** that Robinson's motion for summary judgment

-23-

(Court's Doc. No. 10) is DENIED, the Commissioner's motion for summary judgment (Court's Doc. No. 12) is GRANTED, and the ALJ's decision denying SSI benefits is AFFIRMED.

The Clerk of Court shall enter Judgment accordingly.

DATED this 18th day of May, 2006.


                                    /S/  Carolyn S. Ostby
                                    Carolyn S. Ostby
                                    United States Magistrate Judge